### THE STATE v. MASON PRICE.

Submitted March 17, 1904—Decided June 13, 1904.

1. The "Act for the better regulating and control of the taking, planting and cultivating of oysters and clams on lands lying under the tidal waters of the county of Ocean, in the State of New Jersey," approved March 26th, 1902 (*Pamph. L., p.* 170), is constitutional.

2. With respect to the constitutional prohibition of special laws granting "any exclusive privilege, immunity or franchise," the criterion for determining whether a law is special relates to the recipients of the grant, rather than to the territory within which the privileges are to be exercised.

3. The constitution contains no specific prohibition of local or special laws relating to the preservation and regulation of the oyster and clam fisheries.

4. Where a special or local law relates to a topic that is not within the specific prohibition of paragraph 11 of section 7 of' article 4 of the amended constitution, it would require a plain case, at least, to warrant the courts in declaring a special law void as violative of the affirmative mandate contained in the same paragraph, which declares that the legislature shall pass general laws providing for "all other cases which in its judgment may be provided for by general laws." That clause leaves all subjects outside of the specific prohibitions to be dealt with according to the judgment of the legislature.

5. An indictment for a statutory offence need not contain an aver-
ment that the defendant is not within an excepted class, unless
the exception be found in the enacting or prohibitory clause.    If
it be found in a separate substantive clause, and is not an essential
part of the description of the offence, it is matter of defence.

On *certiorari*.    Motion to quash indictment.

Before Justices HENDRICKSON and PITNEY.

For the state, *Isaac W. Carmichael.*

For the defendant, *Ralph W. E. Donges* and *John W. Wescott.*

The opinion of the court was delivered by

PITNEY, J.    The defendant, having been indicted by the
grand jury of Ocean county for violations of chapter 39 of
the laws of 1902 entitled "An act for the better regulation
and control of the taking, planting and cultivating of oysters
and clams on lands lying under the tidal waters of the
county of Ocean, in the State of New Jersey" (*Pamph. L.,
p.* 170), as amended by chapter 251 of the laws of 1903
(*Pamph. L., p.* 638), has caused the indictment to be re-
moved into this court by *certiorari,* and now moves that it
be quashed.

The ground principally urged is that the act in question
is unconstitutional for want of generality, its scope being
territorially limited to certain portions of the county of
Ocean.

The constitutional inhibition relied upon is paragraph 11
of section 7 of article 4, adopted as an amendment to the
constitution in 1875, the portion thereof that is especially
pertinent reading as follows:          .

"The legislature shall not pass private, local or special
laws in any of the following enumerated cases, that is to say,
*    *    *    regulating the internal affairs of towns and coun-
ties;   appointing local offices or commissions to regulate

municipal affairs; \* \* \* granting to any corporation, association or individual any exclusive privilege, immunity or franchise whatever; \* \* \* the legislature shall pass general laws providing for the cases enumerated in this paragraph, and for all other cases which, in its judgment, may be provided for by general laws."

The act in question is modeled closely after the act of March 24th, 1899, pertaining to the oyster grounds of Delaware bay and Maurice river cove, which was sustained as constitutional by this court in *State* v. *Corson,* 38 *Vroom* 178 (at *p.* 188, &c.) Little needs to be added to what was said by the present Chief Justice in that case, although the ground of the present attack is somewhat different.

The mere fact that a given act of the legislature is limited in its territorial scope to a portion of the state coincident with or less than the bounds of a single county or other municipal division, does not make such act an act regulative of the "internal affairs" of such county or municipality within the meaning of the constitutional prohibition. The above paragraph of the constitution deals with the municipalities not as territorial divisions but as governmental entities. An act that deals with matters of municipal government, or affects the municipalities in their governmental capacity, regulates their internal affairs within the meaning of the prohibition. But an act that has no such force or effect is not within the prohibition, although, with respect to the geographical area of the county or other municipal division, its operation be internal.

The act under consideration in nowise regulates or affects the internal affairs of the county of Ocean, or of any other municipality. It neither creates any new municipal corporation nor disturbs any already in existence. It neither confers nor withdraws powers of local government. It imposes no expense upon the county, nor adds anything to the county treasury. It deals directly with lands owned by the state in its sovereign capacity, for the purpose of administering and regulating fishing privileges that are held by the state in trust for the citizens thereof.

Nor does this act violate the constitutional prohibition of special laws granting exclusive privileges. That such privileges as the act confers are exclusive in their character, is settled by the decisions of this court in *State* v. *Post,* 26 *Vroom* 264, and *State* v. *Corson,* 38 *Id.* 178, upon statutes that in this respect are not dissimilar to the one before us. That these privileges are to be locally enjoyed is, of course, quite obvious. But the circumstance that the act is local in its operation does not of itself alone render it obnoxious to the constitutional interdict, even though it relates to one of the subject-matters mentioned in the paragraph. The terms "private, local or special" are there used disjunctively. They are not all equally applicable to the several topics of legislation mentioned. The term "local" has little or no applicancy to the grant of exclusive privileges, immunities or franchises to a corporation, association or individual. With respect to this topic, the criterion for determining whether a law is special in its application relates to the method of determining the individuals or classes to whom the privileges shall be granted rather than to the territory within which they are to be exercised. A privilege may be exclusive and special, although its enjoyment extend throughout the confines of the state. On the other hand, a privilege or franchise may be general and not special, although the enjoyment thereof be localized within a limited territory. The act under consideration in State *v.* Post was condemned because it conferred an exclusive privilege upon a limited number of individuals who were distinguished from all other citizens by characteristics that bore no rational relation to the subject-matter of the legislation. This statute was not condemned because it was local in its operation. On the contrary, Mr. Justice Van Syckel said: "The state may grant rights in some of its land without disposing of all its possessions, but it cannot select individuals or corporations as the objects of its bounty to the exclusion of other citizens of the state." The same reasoning was adopted in *State* v. *Corson, Id.* (at *p.* 188).

The act before us is like that reviewed in the Corson case

(except in respect to the locality in which it operates) in that it establishes a state commission for supervising and protecting the oyster and clam beds and grounds in the tidal waters of Ocean county, and empowers the commissioners to grant to *bona fide* citizens and residents of this state, who have been such for twelve months next preceding, leases at stipulated annual rentals, entitling the lessees to the exclusive use and enjoyment of specified portions of the oyster grounds for the taking, planting and cultivating of oysters, and also authorizes annual licenses to citizens and residents,· permitting the licensees to take oysters and carry on the oyster business in the tidal waters of· said county. These privileges are open to all citizens and residents of the state on equal terms, and so the act is not a special law in respect of its grant of exclusive privileges. It is not, therefore, antagonistic to either of the specific prohibitions of the constitutional provision above quoted.

But that provision also contains a mandate upon the legislature to pass general laws providing for the cases enumerated in the paragraph, "and for all other cases which in its judgment may be provided for by general laws." It is earnestly insisted by the learned counsel for the defendant (and here the argument proceeds beyond that which was overruled in the above cases) that legislation concerning the protection and development of the oyster industry may well be, and ought to be, provided for by general laws, operative alike throughout the tidal waters of the state. But the framers of the general mandate just quoted distinctly and, as we think, wisely left the provision of general laws upon all subjects, outside of those specifically enumerated, to be dealt with according to the judgment of the legislature. Without going so far as to say that no special law outside of the specific prohibitions could be declared void by the courts for want of generality, it is sufficient to declare that it would require a plain case to warrant the courts in interfering. on that ground, and that the statute before us presents no such case.

In addition to the circumstance pointed out in State *v.*

Corson, that this legislation deals with the landed property of the state, it is worthy of remark that it deals with that property in respect of the grant and regulation of the privilege of taking fish, which by general law, time out of mind, has been one of the peculiar functions of government. Fish and game, in their natural state, are not the subject of private property. At the common law they were a part of the royal prerogative, "vested in the king alone, and from him derived to such of his subjects as have received the grant of a chase, a park, a free warren or free fishery." 2 *Bl. Com.* 410. See, also, *Id.* 14. In the American states the general ownership of wild animals, including fish and game, so far as they are capable of ownership, is in the state, not, indeed, in ordinary proprietorship, but in its sovereign capacity as the representative of and in trust for the benefit of its people in common. The subject is ably discussed, from the historical standpoint, by Mr. Justice White, in *Geer* v. *Connecticut,* 161 *U. S.* 519. And, as pointed out in *Manchester* v. *Massachusetts,* 139 *Id.* 240 (at *p.* 258), the state has "the right of control over fisheries, whether the fish be migratory, free-swimming fish or free-moving fish, or fish attached to or embedded in the soil." See, also, *Smith* v. *Maryland,* 18 *How.* 71, 74; *McCready* v. *Virginia,* 94 *U. S.* 391; *Stockton* v. *Baltimore and New York Railroad Co.,* 32 *Fed. Rep.* 9, 19.

It would seem to result, as a matter of natural equity, that the regulation of the right to take fish and game in any and every part of the state ought to be reserved by the legislature and administered in such manner as to give equal opportunities to all the citizens of the state, rather than that this governmental function should be delegated to the citizens of any locality. But from this it by no means follows that the taking of fish or game in one locality must be made subject to the same regulations as to times, modes and seasons that are in force in other localities. With reference to fish, the character of the waters; with reference to game, the character of the land, whether low or elevated, open or wooded, near to or remote from populous centres, near to or remote from the

seaboard, are features that tend to distinguish one part of the state from another. With reference both to fish and to game, climatic conditions vary in the different parts of the state. For any or all these reasons, the legislature may well conclude that laws upon this subject should be local in their operation, rather than general. That they have so concluded with reference to legislation concerning clams and oysters, is manifest by reference to the statutes upon that subject, enacted from the time of the adoption of the constitutional amendments until the present. See *Gen. Stat., pp.* 811–816, 821–832; *Pamph. L.* 1897, *pp.* 352, 355; *Pamph. L.* 1898, *pp.* 158, 188; *Pamph. L.* 1899, *pp.* 85, 265, 333, 506; *Pamph. L.* 1900, *pp.* 98, 173, 292, 330, 396, 422, 475; *Pamph. L.* 1901, *pp.* 11, 307, 326; *Pamph. L.* 1902, *pp.* 170 (the act before us), 62; *Pamph. L.* 1903, *pp.* 638, 642.

We find, therefore, that the act under consideration is not unconstitutional in any of the respects mentioned.

The sole remaining ground on which the motion to quash the indictment has been pressed is that it fails to allege that the grounds from which the defendant is charged with having taken oysters and clams were grounds not excepted from the general operation of the act by its ninth section. That section declares that nothing in the act shall be interpreted to confirm the title of any person to any lands excepted from leaseholds by the provisions of section 5; *"provided, however, that any person who has held or planted grounds within the limits therein excepted shall be granted two years' time from June first, nineteen hundred and two, in which to remove said oysters and cultch planted thereon by him."* The argument is that the indictment ought to show that the defendant is not within the saving of this proviso.

But no count of the indictment is founded on either the fifth or the ninth section of the act. There are six counts, four of which are based upon violations of section 16, as amended in 1903, and the remaining two counts set up violations of section 21 of the act of 1902. The proviso contained in section 9 has no limiting effect upon either of these prohibitions. It sets up an independent personal privilege, based

on special circumstances. It is settled that an indictment for a statutory offence need not contain an averment that the defendant is not within an excepted class, unless the exception is found in the enacting or prohibitory clause of the act. If it be found in a separate substantive clause, and is not an essential part of the description of the offence, it is matter of defence. *Mayer* v. *State*, 35 *Vroom* 323.

The motion to quash is denied, with costs.